**Arthur W. LUNDBERG and Eva L. Lundberg, Appellants,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Respondent.**

**No. WD 34363.**

Missouri Court of Appeals, Western District.

Nov. 22, 1983.

Richard E. Duggan, Sunrise Beach, for appellants.

John J. Kitchin, Robert W. McKinley, Kansas City, for respondent; Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, of counsel.

Before SOMERVILLE, P.J., and MANFORD and LOWENSTEIN, JJ.

SOMERVILLE, Presiding Judge.

This litigation arose out of plaintiff-husband's termination as sales manager for defendant under a contract of employment terminable at will. The sole issue on appeal is whether plaintiffs' evidence supported submission of their claims for compensatory and punitive damages under the prima facie tort theory. The trial court did not think so, as it directed a verdict in favor of defendant at the close of plaintiffs' evidence.

The elements of a prima facie tort, per the landmark case of *Porter v. Crawford & Co.,* 611 S.W.2d 265, 268 (Mo.App. 1980), the most definitive and exhaustive discussion of the doctrine to date in this state, are: (1) An intentional lawful act by the defendant; (2) An intent to cause injury to the plaintiff; (3) Injury to the plaintiff; (4) An absence of any justification or an insufficient justification for the defendant's act.

Realistically, this court cannot blind itself to the well-established rule recently emphasized in *Amaan v. City of Eureka,* 615 S.W.2d 414, 415 (Mo. banc 1981): "In Missouri the rule is well established 'that in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such cases no action can be obtained for wrongful discharge.' *Christy v. Petrus,* [365 Mo. 1187] 295 S.W.2d 122, 124 (Mo. banc 1956); *Cooper v. City of Creve Coeur,* 556 S.W.2d 717, 720 (Mo.App.1977)."

Plaintiffs, husband and wife, filed a two count petition. The first count sought compensatory and punitive damages on behalf of the husband, the second count was a derivative action on behalf of the wife, with both carefully couched to plead all the essential elements of a prima facie tort. The decisive facts for testing the verdict directed in favor of defendant, governed by treating plaintiffs' evidence as true and giving them the benefit of all reasonable inferences, unfold as follows.

Plaintiff-husband (hereinafter singularly referred to as plaintiff), for a number of years, held the position of staff sales manager for defendant in one of its Kansas City District offices. The position was documented by a written agreement which, inter alia, provided that plaintiff's position as staff sales manager "and this Agreement may be terminated by either party at any time." Plaintiff, as staff sales manager, was responsible for one of four staffs of sales agents and, through the efforts of himself and his staff, of promoting the success of defendant and in carrying out its sales and service programs under the supervision of a district manager. In the company hierarchy, the district manager was plaintiff's immediate superior. A new district manager for the Kansas City District was appointed by defendant in July, 1980.

The new district manager stressed "joint production", i.e. sales produced by customer contacts made jointly by a staff sales manager and a staff sales agent. Certain production quotas in this respect were set which plaintiff failed to meet. The district manager, by letter, expressed his disappointment to plaintiff about his failure to meet joint production quotas and offered suggestions to plaintiff in an effort to assist him. Shortly thereafter, production goals for plaintiff's staff of sales agents were set for calendar year 1981 and, additionally, they were placed on "Citation Pace", a company-wide goal. By letter, the district manager advised plaintiff that "nothing short of super human effort on your part" could accomplish such goals and "that anything less than this type of effort" would "not be tolerated." A subsequent letter

from the district manager reminded plaintiff that failure to meet his production quotas for the first quarter of calendar year 1981 would leave the district manager with "no choice" but to "assign" him to "whatever agency is available in the office."

Plaintiff's sales staff was initially considered by the district manager as having real potential for making "Citation Pace". One of plaintiff's staff agents "topped" the district in sales and accounted for approximately one-third of the staff's production.

Methods of achieving production goals by the present district manager and his predecessor differed. Plaintiff preferred the predecessor's methods. During calendar year 1980 plaintiff's sales staff had the smallest number of joint production applications in the district. There was no increase in joint production applications by plaintiff's sales staff from late November, 1980, to March 1, 1981. Plaintiff claims that a few days later the district manager removed him as staff sales manager and reassigned him as a sales agent in his home area. The evidence in this respect is not as clear as plaintiff would have one believe. It is arguable that plaintiff asked to be relieved as sales manager and reassigned as a sales agent. Tangentially, another staff sales manager was removed by the district manager in the fall of 1980.

Prior to July, 1980, the time the new district manager arrived on the scene, plaintiff had been a "top" sales manager and was well liked by those he worked with. As far as plaintiff was concerned, a personality conflict existed between him and the new district manager as evidenced by the following excerpt from plaintiff's testimony: "Mr. Naegler [the new district manager] just did not like me. And I don't like him either." The record also suggests that plaintiff was quick to draw certain broad conclusions as he testified that he had the "respect" of the other agents in the office, the new sales manager did not, and was "jealous" of plaintiff for that reason. Plaintiff was still working for defendant as a sales agent at the time of trial.

By way of damages, plaintiff claimed that his demotion would cause him to suffer loss of income and retirement benefits thereafter and that he was humiliated, disgraced and embarrassed, thereby causing him to suffer severe emotional distress. Plaintiff-husband prayed for compensatory damages in the sum of Four Hundred Fifty Thousand ($450,000) Dollars and punitive damages in the sum of One Million ($1,000,000) Dollars. Plaintiff-wife, in her derivative action, prayed for compensatory damages in the sum of Twenty-Five Thousand ($25,000) Dollars and punitive damages in the sum of One Hundred Thousand ($100,000) Dollars.

The appellation, prima facie tort, continues to invoke mixed reactions in legal circles in this state notwithstanding its recognition as an accepted doctrine in *Porter v. Crawford & Co.,* supra. A legitimate concern has been whether the prima facie tort doctrine would be shaped into a well-defined tort category with clearly etched boundaries or whether it would be an abstraction presaging a cause of action under the facade of a tort for every situation where none previously existed.

The prima facie tort doctrine, admittedly in an embryonic stage in this state, looks to § 870, Restatement (Second) of Torts (1977), as a basic source. *Porter v. Crawford & Co.,* supra. Sensing a judicial responsibility to guard against its unjust exploitation, *Porter v. Crawford & Co.,* supra, requires a "balancing of interests" in accordance with criteria set forth in the Comment to § 870, Restatement (Second) of Torts, supra, at 280, to determine its applicability across a broad and variable spectrum of potential facts. As is true with any new and emerging doctrine, a degree of metamorphosis inevitably occurs. Disciplined exercise of judicial responsibility in the "balancing of interests" will vindicate adoption of the prima facie tort doctrine. Conversely, failure to do so will reap adverse results of untold consequence. If properly exercised, a small residue of tortious conduct heretofore immune from redress because not fitting a classic tort mold will become accountable. If improperly ex-

ercised, it will degenerate into a disastrous legal detour with no defined beginning, course or end.

Drawing on what has heretofore been said, the ultimate task of determining whether the trial court erred in directing a verdict in favor of defendant at the close of plaintiffs' evidence is now at hand. Before reaching the stage of "balancing" the "interests" to make this crucial determination, a basic requirement of submissibility applicable to cases in general—evidentiary support—warrants attention.

■ The second element of a prima facie tort is "[a]n intent to cause injury to the plaintiff." *Porter v. Crawford & Co.,* 611 S.W.2d at 268. Proof that defendant intentionally did the lawful act in question (the first element), even if accompanied by proof that plaintiff was injured (the third element) and that there was an absence of justification or an insufficient justification for defendant's act (the fourth element), does not make a submissible case. Plaintiff carries an additional burden, albeit a heavy one to shoulder, of proving an "actual intent" on defendant's part to *injure* plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. *Porter v. Crawford & Co.,* 611 S.W.2d at 269. Plaintiff, in attempting to do so, pursues an eclectic course by arguing that one may reasonably infer from the following random bits of evidence that defendant intended to injure plaintiff: (1) plaintiff and his staff were singled out for "Citation Pace", achievement of which would "require nothing short of super human effort"; (2) prior to the arrival of the new district manager, plaintiff's staff of sales agents had the best production record in the Kansas City District; (3) no other sales manager was demoted for failure to meet his production quotas or "Citation Pace" requirements; and (4) the new district manager, according to plaintiff, did not like him. Serious qualms are entertained as to whether a reasonable inference can be drawn from the foregoing of an "actual intent" on defendant's part to *injure* plain-

tiff by demoting him. Gross speculation and conjecture cannot fill the role of a reasonable inference for the purpose of making a submissible case.

Moreover, plaintiff's evidence was replete with testimony that he was not meeting production quotas set by the district manager. Also, that he was not in step with managerial policies. In other words, an abundance of evidence came in during the presentation of plaintiffs' case justifying defendant's termination of plaintiff as sales manager. In a society which professes to believe in the free enterprise system, profit motivation, economic self-interest, and business success are not offensive terms.

This appeal, however, is far from being laid to rest even if it be assumed, arguendo, that neither intent to injure nor sufficient justification are ripe for disposal under general principles of submissibility. The judicial responsibility of a "balancing of interests" advocated in the official Comment to § 870, Restatement (Second) of Torts, supra, and subscribed to in *Porter v. Crawford & Co.,* 611 S.W.2d at 270, must be undertaken to determine whether defendant's conduct was tortious. The Restatement (Second) of Torts, lists four factors to be considered when doing so: (1) the nature and seriousness of the harm to the injured party; (2) the interests promoted by the actor's conduct; (3) the character of the means used by the actor; and (4) the actor's motive. Id., Comments f, g, h and i, pp. 283–84. With reference to factor (1), physical harm to person or property is weighted more heavily than emotional harm or harm to prospective pecuniary interests; with reference to factor (2), established privileges or rights of the actor are to be afforded proper weight; with reference to factor (3), conduct with offends societal concepts of fairness and morality favor liability; and with reference to factor (4), the degree of malice motivating the actor may be so overwhelming as to tip the scales in favor of liability. Id.

The "balancing of interests", like so many legal guidelines, is easier to articulate than to implement. Fortunately, the facts presented by this case make the task easier than might otherwise be anticipated. Factor (1), supra, the nature and seriousness of the harm claimed by plaintiff, is weighted in favor of defendant as emotional harm and harm to prospective pecuniary interests are the bases for damages claimed by plaintiff. Factor (2), supra, the interests promoted by defendant's conduct, is weighted in favor of defendant as the contractual relation between plaintiff and defendant, under existing Missouri law, gave defendant the right to terminate plaintiff's position as sales manager "at any time, without cause or reason, or for any reason." *Amaan v. City of Eureka,* 615 S.W.2d at 415. Factor (3), supra, the character of the means used by defendant, is weighted in favor of defendant as exercise of a contractual right, absent attenuating circumstances non-existent in this case, is neither unfair nor morally offensive when measured by obtaining societal standards. Factor (4), supra, defendant's motive, is weighted in favor of defendant as a paucity of evidence, if any whatsoever, was presented that plaintiff was demoted out of spite by defendant's district manager to mollify any purported ill-will on his part. Conversely, plaintiff's own evidence amply demonstrated that plaintiff was demoted for legitimate business reasons.

Judicial invasion of management decisions and impingement upon agreed terms of employment emerge, when, as here, the prima facie tort doctrine is resorted to by a discharged employee to impose liability against an employer where the employment is terminable at will. Under an unadulterated "balancing of interests" process, conversion of employment relationships terminable at will to employment relationships terminable only for good cause under the guise of prima facie torts will have to be postulated on facts vastly different from those presented by the instant case.

It was both within the province and the duty of the trial judge below, and, concomitantly, of this court on appellate review, to "balance" the "interests" and determine whether defendant's conduct was tortious.

*Porter v. Crawford & Co.,* 611 S.W.2d at 270. Doing so patently demonstrates that defendant's conduct was not tortious and that the trial court properly directed a verdict in its favor at the close of plaintiffs' evidence.

Judgment affirmed.

All concur.