Greg COSTELLO, Respondent,

v.

SHELTER MUTUAL INSURANCE COMPANY, Shelter General Insurance Company and Shelter Life Insurance Company, Appellants.

No. 48787.

Missouri Court of Appeals, Eastern District, Division Two.

July 2, 1985.

Motion for Rehearing and/or Transfer Denied Aug. 28, 1985.

Application to Transfer Denied Oct. 16, 1985.

 

James E. Godfrey, Godfrey, Vandover & Burns, St. Louis, Walter D. McQuie, Jr., Montgomery City, for appellants.

Daniel P. Card, II, Chester A. Love and Kris R. Baumgartner, St. Louis, for respondent.

CRIST, Judge.

Prima facie tort action.

Respondent Costello was a direct insurance agent of appellants (Shelter Companies). He had been associated with Shelter in the capacity of salaried agent, district sales manager, and district sales agent from August, 1972, until October, 1981. On October 12, 1981, Shelter Companies terminated his agency. The written agreement in force between the parties provided either could terminate the agency at any time upon written notice. Costello brought an action against Shelter Companies on a prima facie tort theory, asserting Shelter terminated his agency agreement with an intent to cause him injury and that they acted with insufficient justification. The jury found in favor of Costello and awarded him Twenty-Five Thousand Nine Hundred Dollars ($25,900.00) in actual damages and punitive damages against each individual company totalling Seventy Thousand Dollars ($70,000.00). We reverse.

Recent decisions have left doubt as to the viability of the prima facie tort theory. *Dowd v. General Motors Acceptance Corp.*, 685 S.W.2d 868 (Mo.App.1984); *Bandag of Springfield, Inc. v. Bandag, Inc.*, 662 S.W.2d 546 (Mo.App.1983). This is especially true in the area of employment termination. *Dake v. Tuell*, 687 S.W.2d 191 (Mo.banc 1985); *Lundberg v. Prudential Ins. Co. of America*, 661 S.W.2d 667 (Mo.App.1983).

In *Dake v. Tuell, supra* at 193, the Missouri Supreme Court held at will employees cannot use the prima facie tort theory to bring a wrongful discharge action. Absent a contract violation or a contrary statutory provision, at will employees cannot maintain a suit for wrongful discharge against their former employers "by cloaking their claims in the misty shroud of prima facie tort." *Dake v. Tuell, supra* at 192–193.

In the instant case, Costello was not an employee at will. He was an agent denominated independent contractor whose agency was governed by a written agreement of indefinite term allowing for termination by either party upon written notice. Costello had an agency contract terminable at will. See *Paisley v. Lucas*, 346 Mo. 827, 143 S.W.2d 262, 271 (1940). When the company exercised its right to terminate, it was of no consequence what its reason may have been. *Christensen v. Prudential Ins. Co. of America*, 204 S.W.2d 459, 463 (Mo.App. 1947). Costello complains of the effect of this agreement. However, the agreement was valid, it was not violated, and the courts cannot substitute another. *Christensen v. Prudential Ins. Co. of America, supra* at 464; see also *Quist v. Guardian Life Ins. Co. of America*, 453 F.Supp. 842, 845 (D.Ariz.1978). In light of the above, we review the prima facie tort action.

Shelter Companies suggest several reasons for reversal, only one of which need be addressed: submissibility. In reviewing the evidence we must view it in the light most favorable to the verdict, giving Costello the benefit of all inferences which reasonably could be drawn. *Bandag of Springfield, Inc. v. Bandag, Inc.*, 662 S.W.2d 546, 551 (Mo.App.1983). Costello is bound by uncontradicted evidence adduced by him. The court may not consider only

isolated parts of his evidence. *Levin v. Sears, Roebuck & Co.*, 535 S.W.2d 525, 527 (Mo.App.1976). We must also consider such evidence and inferences offered by Shelter Companies as are favorable to Costello. We will disregard any of Shelter's evidence contradictory or unfavorable to Costello's contentions. *Bateman v. Rosenberg*, 525 S.W.2d 753, 755 (Mo.App.1975).

Under the theory of prima facie tort as adopted in *Porter v. Crawford & Co.*, 611 S.W.2d 265 (Mo.App.1980) and developed in *Dowd, Bandag,* and *Lundberg, supra,* Costello must offer evidence to prove the following: (1) Shelter Companies intended to terminate the agency contract by lawful act, i.e. termination by giving Costello written notice as provided by the agency agreement; (2) Shelter Companies not only intended to terminate the agency agreement thereby injuring Costello, but Shelter had an actual intent to injure Costello; (3) Costello was injured; (4) Absence of any justification or insufficient justification for the termination by Shelter Companies. If Costello proved these four elements, the court must then determine (a) if Costello could have brought another nominate tort and (b) whether Shelter Companies' actions were tortious by application of a "balance of interest" test which includes four factors. Since we find there was insufficient proof of intent to injure Costello, we need not "balance the interests" nor determine if there was another nominate tort.

◼ We find Costello failed to sustain his heavy burden of proving actual intent to injure or malice on the part of Shelter Companies. See *Bandag of Springfield, Inc. v. Bandag, Inc., supra* at 555 (on alternative motion for rehearing or for transfer). The evidence adduced by Costello on which he is bound and the evidence viewed favorably to Costello on the issue of intent to injure is as follows:

Costello commenced his career with Shelter Companies as their employee-sales agent in August, 1972. He was District Sales Manager in Illinois from October, 1973, through May, 1975. He became sales agent in Warrenton, Missouri, from May, 1975, until his termination on October 12, 1981. After May, 1976, he was serving under a written agency contract by which he became an independent contractor. The written agreement provided he was an exclusive agent and could not represent other insurance companies without the express consent of Shelter Companies; Costello was an independent contractor over whom Shelter Companies would have no control over hours, places, or methods of work provided he comply with terms of the agreement; the agency agreement could be terminated by either party at any time upon written notice. Despite the termination provision, Shelter Companies had represented and advised Costello an agent would only be terminated for good cause.

In 1979, Costello requested his wife, Beverly, be included on the agency agreements. His immediate supervisor advised Costello of longstanding corporate policy prohibiting a spouse from being an agent or signatory on agency agreements. From 1972 until July 1, 1981, when Lehr became President, no spouse had been included on an agency agreement. This policy was changed by Lehr in July, 1981. Costello received a memorandum regarding the change of policy.

In April, 1980, Costello's wife passed her brokerage test and joined with another person to form Tri-County Agency, an independent insurance agency in competition with Shelter Companies in Warren County. As a broker, she solicited and sold insurance up until the time of the trial. Costello had no ownership or management interest in Tri-County Agency.

In the Fall of 1980, a group of Shelter Companies' agents formed an "Agents' Association" to voice concerns, negotiate and deal with Shelter Companies concerning problems and other matters regarding the agents and their relationship with Shelter Companies. Costello became vice-president and was an active spokesperson for the Agents' Association. In the Spring of 1981, Costello met with Lehr, president elect of Shelter Companies. There followed a heated discussion regarding mat-

ters of concern to the Agents' Association, including the termination at will provision. Lehr became angry. Costello's immediate supervisor described Costello's disagreement regarding the graduated commission policy as disloyalty to Shelter Companies, stating, "we can always terminate you."

On September 11, 1981, Costello was told Shelter Companies had an unwritten policy agents' wives could not sell insurance for another company. If Costello's wife did not stop selling, his agency would be terminated. Costello's wife continued to sell insurance. On October 12, 1981, Shelter Companies terminated its agent's agreement with Costello.

Costello asserts the following evidence comprised substantial evidence from which a jury could determine Shelter Companies' intent to cause him injury: (1) Costello was among the top agents of Shelter Companies and no one was dissatisfied with the manner in which he conducted his business; (2) Costello was an active and vociferous spokesperson for the Agents' Association which Shelter Companies' new president Lehr strongly opposed. Lehr directed his anger towards Costello personally at a meeting when Costello expressed the Association's dissatisfaction with the contract right to terminate at will; (3) Costello's immediate supervisor described Costello as evidencing disloyalty to Shelter Companies and threatened termination because he was vocal in his objections concerning the graduated commission scale and other company policies; (4) Costello's wife had been a licensed agent for competing companies since April, 1980. Shelter Companies did not change its policy of not including a spouse on an agent's agreement until July 1, 1981. After Lehr's heated discussion with Costello as Agent spokesperson and shortly after Lehr became president, Costello was terminated; (5) Extreme pressure was brought to bear·on Costello to force his wife, who was not a party or signatory to the agency agreement, to change her activities; (6) Similar pressure was not brought to bear on another female agent whose husband was a licensed agent and represented competing insurance companies; (7) Shortly after Costello consulted an attorney he was abruptly terminated; (8) Upon termination, Shelter Companies brought six high level management officials to Warrenton to take over the business, and at the same time attempted to entice Costello's secretary away and take over his business telephone number.

We find such evidence insufficient evidence of intent to injure Costello, when coupled with the evidence adduced by Costello that the contract was terminated because of Shelter Companies' business judgment that a conflict of interest would result from wife's activities and not for punitive reasons. Shelter Companies offered to put wife on the agency contract once that policy was changed.

This action is not for breach of contract. Costello's evidence reveals two possible reasons for termination of agency: the competing agency of his spouse and his activities in the Agents' Association. The evidence regarding Costello's activity in the Agents' Association shows Shelter Companies were not happy with such activities. However, the heated argument between Lehr and Costello and the words of warning from his immediate supervisor were not sufficient to show a specific intent to injure Costello by firing him. The fact that Costello was terminated and suffered injury is insufficient.

Judgment reversed.

SIMON, P.J., and SATZ, J., concur.