634 F.Supp. 367 (1986)
MACHINE MAINTENANCE & EQUIPMENT CO., INC., Plaintiff,
v.
COOPER INDUSTRIES, INC., d/b/a Industrial Machinery Division, unincorporated division, Defendant.
No. 83-2343C(6).
United States District Court, E.D. Missouri, E.D.
May 12, 1986.
*368 James J. Raymond, Nicholas J. Lamb, for plaintiff.
Stefan J. Glynias, for defendant.

MEMORANDUM
GUNN, District Judge.
This case arises out of the termination of an industrial machinery distributorship agreement. Beginning in 1976, plaintiff Machine Maintenance & Equipment Co. (MM & E) was a distributor for the sale, repair and replacement of defendant Cooper Industries, Inc.'s (Cooper) Gardner-Denver product line of industrial compressors. In October 1980 the parties entered into a new written distributorship agreement extending this relationship. The agreement contained a termination clause whereby either party could terminate it without cause upon ninety (90) days notice in writing to the other party, and that Cooper could terminate it with cause under certain enumerated circumstances, upon one day's notice in writing. These circumstances included breach of the agreement by MM & E or any action on its part deemed by Cooper to be detrimental to Cooper's best interests.
By letter dated July 28, 1983 Cooper notified MM & E that the Dealership Agreement was to be terminated on August 31, 1983 for cause because MM & E had not fulfilled its obligations under the Agreement. Specifically, the letter stated that MM & E's sales had steadily declined, that MM & E had not maintained an adequate supply of parts, had not provided service, had not paid its accounts when due, had not sufficiently promoted the sale and use of Cooper's products, and had received customer complaints. The complaint alleges that on August 2, 1983 two former MM & E salesmen who had resigned on July 24, 1983 and formed their *369 own corporation after informal discussions with Cooper, formally proposed to Cooper in writing that their corporation become the distributor of the product line and in the area previously assigned to MM & E, a proposal accepted by Cooper on August 19, 1983.
In Count I of its six-count complaint, MM & E alleges that the reasons specified in the termination letter were untrue and that the termination was wrongful and in breach of Cooper's duty to deal fairly and in good faith with MM & E. MM & E seeks $3,000,000 in actual damages including loss of investment, loss of good will, loss of profits and loss of future profits. Count II alleges that the breach of contract and of the duty of fair dealing were willful and malicious and seeks punitive damages in the amount of $6,000,000. Counts III, IV and V claim violations of federal antitrust laws. Count III alleges that prior to defendant Cooper's termination of its distributorship agreement with MM & E, Cooper and the two MM & E salesmen formulated a plan whereby the salesmen would resign from MM & E and be subsequently granted the distributorship instead of MM & E. The complaint claims that this plan was a combination and/or conspiracy in violation of § 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1 entitling MM & E to treble damages in the amount of $9,000,000. Count IV alleges that termination of the distributorship agreement with MM & E was a sanction for MM & E's failure to conform to Cooper's maximum resale prices, an action constituting vertical price restraint in violation of § 1 of the Sherman Act. Count V seeks antitrust damages for alleged horizontal price restraints effectuated by Cooper in its role as retail distributor of the same Gardner-Denver products it supplied to MM & E. Finally, Count VI of the complaint claims that Cooper's termination of the agreement and its market conduct was a prima facie tort.
Defendant Cooper has filed a six-count counterclaim alleging in Count I that MM & E owes Cooper $127,837.76 for equipment received and not paid for; in Count II that MM & E owes Cooper $67,306.00 for equipment ordered but later rejected; and in Counts III, IV, V and VI that MM & E knowingly sold equipment falsely designated as manufactured and sold by Cooper, in violation of 15 U.S.C. § 1125(a) (the Lanham Trade-Mark Act) for which Cooper seeks $500,000 actual damages and $15,000,000 punitive damages.

Plaintiff MM & E's motion for summary judgment
Plaintiff MM & E has moved the Court to dismiss[1] Counts II through VI of defendant's counterclaim. To support this motion plaintiff refers the Court to defendant's answers to interrogatories thereby requiring treatment of the motion as one for summary judgment. Rule 12(c), Fed.R. Civ.P.[2] In ruling on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the nonmoving party. A movant is entitled to summary judgment only if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. See also Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983).

Purchase price of rejected goods
Plaintiff argues that Count II of the counterclaim for the purchase price of equipment ordered and then rejected is deficient because (a) the purported purchase order form is in fact a counteroffer by Cooper which MM & E did not accept; (b) Cooper cannot recover the full purchase price of goods it kept in its possession; and (c) Cooper did not allege that it attempted to mitigate its damages by selling the equipment in question.
In opposition to the motion for summary judgment, Cooper asserts that the compressor unit MM & E ordered was custom made; that Cooper did in fact make continuing efforts to resell the unit; and that *370 MM & E was aware of Cooper's order cancellation policy which provides for cancellation charges equalling 100% of the purchase price. Cooper argues that under these circumstances it is entitled to maintain an action for the price under the Uniform Commercial Code as enacted by Missouri, §§ 400.1-102(3) and 400.2-709, Mo. Rev.Stat. (1982).[3] The Court concludes that a determination of the rights of the parties under Count II of defendant's counterclaim requires resolution of factual issues thereby precluding summary judgment on this count.

Federal trademark violation
Dismissal of Counts III through V is urged on the ground that the activity alleged by Cooper does not constitute a violation of the Lanham Trade-Mark Act, 15 U.S.C. § 1125(a), which forbids the false designation of origin and false description of goods as follows:
(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, ... shall be liable to a civil action by any person ... who believes that he is or is likely to be damaged by the use of any such false description or representation.
Cooper's factual allegations supporting its claim for damages under this provision are that MM & E sold certain non-Gardner-Denver products to customers who ordered Gardner-Denver products and that these products were represented to the customers as Gardner-Denver products either by MM & E's salesmen or by the use of Gardner-Denver parts numbers. Plaintiff argues that these allegations, even if true, do not state a claim under 15 U.S.C. § 1125(a), because the products in question were identical to those supplied by Gardner-Denver, i.e., they were made by the same manufacturer that supplied Gardner-Denver which then resold the products with the Gardner-Denver label and parts number to distributors like MM & E.
In support of its position, MM & E relies upon cases which hold that an action under the Lanham Act does not lie for the unauthorized sale of genuine goods. In El Greco Leather Products Co. v. Shoe World, Inc., 599 F.Supp. 1380, 1390-94 (E.D.N.Y. 1984), e.g., the owner of a trademark on women's shoes brought an action to enjoin a retailer from selling shoes bearing the plaintiff's mark. The retailer purchased the shoes from the plaintiff's authorized manufacturer after the plaintiff had rejected them. The plaintiff's mark had been affixed under the plaintiff's supervision and with its approval; the rejection was because of late delivery only and not related to quality. The district court held that these facts did not make out a claim for false designation of origin under 15 U.S.C. § 1125(a).
The Court believes that these cases are inapposite. The present case does not involve the unauthorized sale of Gardner-Denver goods but rather the alleged misrepresentation of non-Gardner-Denver goods as Gardner-Denver goods. The Court concludes that defendant has stated a claim under the Lanham Act and that disposition of this claim requires the determination of factual issues. Accordingly, plaintiff's motion for summary judgment on Counts III, IV and V of defendant's counterclaim is denied.

*371 Defendant Cooper's motion for summary judgment

Damages for breach of contract
Defendant Cooper moves for partial summary judgment on the issue of damages in Count I of plaintiff's claim for breach of the distributorship agreement. Defendant argues that the damages plaintiff may recover is limited as a matter of law to those sustained during the ninety day period following the letter of termination because the agreement was terminable without cause on ninety days notice. Defendant further argues that plaintiff's loss of profits are too speculative to support a damages award.
The fundamental measure of contract damages in Missouri is that which places the nonbreaching party in the position it would have been but for the breach. United Industrial Syndicate, Inc. v. Western Auto Supply Co., 686 F.2d 1312, 1316 (8th Cir.1982). Although expected profits are by their nature uncertain, they may be recovered in Missouri "when they are made reasonably certain by proof of actual facts with present data for a rational estimate of their amount." Swiss-American Import Co. v. Variety Food Products Co., 471 S.W.2d 688, 690 (Mo.Ct.App.1971) (proof of jobber in action seeking damages for loss of profits during period when distributor was in breach of exclusive contract was sufficient to support award for such damages). See also Coonis v. City of Springfield, 319 S.W.2d 523, 528 (Mo.1959).
In the present case, plaintiff can only recover damages resulting from or incidental to the alleged breach, which under the facts of this case is not the termination itself, but rather the failure to provide the notice called for by the terms of the agreement. Plaintiff's breach of contract claim is that defendant had no "cause" to terminate the distributorship agreement and therefore breached the agreement by providing notice of 34 days rather than of 90 days. Thus plaintiff will have to prove that any damages sought were the result of this breach, i.e., not the result of the termination itself but of the shortened period of notification.
Under Missouri law, general types of injury which may flow from breach of a notice agreement include lost profits during the notice period as well as certain reliance damages such as costs incurred or losses sustained in expectation of the relationship continuing for at least the notice period. United Industrial Syndicate, Inc. v. Western Auto Supply Co., 686 F.2d at 1316. See also Keystone Floor Products Co. v. Beattie Manufacturing Co., 432 F.Supp. 869, 882 (E.D.Pa.1977) (damages for lost profits resulting from breach of distributorship agreement subject to termination without cause upon stated notice are limited to provable lost sales within termination period; termination period does not necessarily set parameters of all provable damages). The Court believes that Michael Todd & Co. v. Lacal Co., 583 F.2d 1056 (8th Cir.1978) (applying Nebraska law), cited by plaintiff, is inapposite. That case allowed recovery of lost profits for the remaining duration of a 5-year exclusive distributorship agreement which did not contain a termination-with-notice provision.
Accordingly, defendant's motion for partial summary judgment limiting plaintiff's damages for lost profits to the termination period is granted. Plaintiff shall not be precluded from presenting evidence of other expectancy damages resulting from breach of the notice provision.

Breach of duty of fair dealing
Defendant argues that it is entitled to judgment as a matter of law on plaintiff's claim for damages for breach by defendant of its duty of good faith and fair dealing because (a) defendant was not bound by such an implied duty, and (b) there is no evidence of an absence of good faith and fair dealing.
The Court first concludes that under Missouri law both parties to the distributorship agreement were under an obligation of good faith and fair dealing. See Conoco, Inc. v. Inman Oil Co., 774 F.2d *372 895, 908 (8th Cir.1985) (supplier of petroleum products breached its obligation of good faith and fair dealing by bidding against its distributor). "This implied covenant [as recognized in Missouri] imposes upon each party the duty to do nothing destructive of the other party's right to enjoy the fruits of the contract and to do everything that the contract presupposes they will do to accomplish its purpose." Id.
In the present case, the written agreement between the parties provided that either party could terminate the agreement without cause upon ninety days written notice. The Court concludes that plaintiff's claim for breach of the duty of fair dealing cannot be based upon a "without cause" termination by defendant, a right specifically reserved by the contract. If in exercising this right, however, defendant acted in bad faith to interfere with plaintiff's rights under the contract, a cause of action for breach of the duty of fair dealing would arise. Cf. deTreville v. Outboard Marine Corp., 439 F.2d 1099, 1100 (9th Cir.1971) (under South Carolina law) (regardless of broad unilateral termination powers the party who terminates a contract commits an actionable wrong if the manner of termination is contrary to equity and good conscience). Thus the allegation that defendant terminated the distributorship agreement with plaintiff in order to grant the distributorship to someone else cannot support a claim for breach of the duty of fair dealing.
The Court notes that damages flowing from the termination itself, i.e., from loss of the distributorship, are not cognizable under plaintiff's breach of duty of fair dealing claim just as they are not cognizable under the breach of contract claim. Only those damages resulting from defendant's alleged bad faith would be recoverable. For example, if the reasons for the termination enumerated by defendant in its letter of July 28, 1983 were in fact fabricated by defendant and such fabrication resulted in damage to plaintiff's business reputation, plaintiff could recover for such damages. Or, if defendant did not give plaintiff the full ninety days notice in order that plaintiff would not be able to obtain an alternate source of supplies thereby forcing plaintiff's customers to go to defendant's new distributor, plaintiff could recover for lost sales.
Defendant's second argument for summary judgment on the breach of duty of fair dealing claim is that there is no evidence of an absence of good faith or fair dealing. This argument is factually based and cannot support summary judgment in favor of defendant at this point in the proceedings in accordance with the above-stated standard for such judgment. See Rule 56(b), Fed.R.Civ.P.

Punitive damages for breach of contract and breach of duty of fair dealing
Defendant argues that it is entitled to summary judgment on plaintiff's claim for punitive damages because plaintiff failed to allege and cannot prove a tort independent of the breach of contract claims.
In Missouri, punitive damages are generally not recoverable in a case arising out of breach of contract. Stamps v. Southwestern Bell Telephone, 667 S.W.2d 12, 13 (Mo. Ct.App.1984). An exception to this general rule allows punitive damages to be recovered when plaintiff alleges and proves an independent and willful tort founded on the breach of contract, and there are proper allegations of malice. Id. at 13-14; Comerio v. Beatrice Foods Co., 595 F.Supp. 918, 921-22 (E.D.Mo.1984). The Court concludes that plaintiff has alleged sufficient facts to come within this exception. (See discussion of prima facie tort claim, infra, pp. 373-75.) Whether plaintiff will be able to prove its allegations remains a matter of disputed fact thereby precluding summary judgment.

Federal antitrust violations
In Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), the Supreme Court reviewed the basic antitrust doctrines applicable to distributorship-termination cases *373 and set forth the evidentiary standard for establishing liability in such cases:
Section 1 of the Sherman Act requires that there be a "contract, combination ... or conspiracy" between the manufacturer and other distributors in order to establish a violation. 15 U.S.C. § 1. Independent action is not proscribed. A manufacturer of course may deal, or refuse to deal, with whomever it likes as long as it does so independently. [citations omitted.] ... [T]he manufacturer can announce its resale prices in advance and refuse to deal with those who fail to comply. And a distributor is free to acquiesce in the manufacturer's demand in order to avoid termination.
Id. at 1469.
Concerted manufacturer-distributor action to set resale prices is a per se violation of the Sherman Act; concerted action on nonprice restrictions is judged under the rule of reason, which requires a weighing of the relevant circumstances of a case to decide whether a restrictive practice constitutes an unreasonable restraint on competition. Id.[4] Thus, "it is of considerable importance that independent action by the manufacturer, and concerted action on nonprice restrictions, be distinguished from price-fixing agreements." Id. at 1470.
The Supreme Court set forth the following standard of proof for a claim of concerted price-fixing:
On a claim of concerted price-fixing, the antitrust plaintiff must present evidence sufficient to carry its burden of proving that there was such an agreement.
....
... There must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently. ... [T]he antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others "had a conscious commitment to a common scheme designed to achieve an unlawful objective." ... The concept of ... a "common scheme" in a distributor termination case includes more than a showing that [another] distributor conformed to the suggested price. It means as well that evidence must be presented both that the distributor communicated its acquiescence or agreement, and that this was sought by the manufacturer. Id. at 1470-71 & n. 9.
In the present case, defendant's only argument for summary judgment on the three counts of plaintiff's complaint claiming violations of the Sherman Anti-Trust Act is that the evidence supports the inference that there was no concerted activity between defendant and the parties awarded plaintiff's distributorship, and that plaintiff has no evidence which tends to exclude this possibility.
Plaintiff, however, asserts that it has circumstantial and direct evidence that defendant and plaintiff's two former salesmen were parties to an agreement to maintain resale prices and that the termination of plaintiff was part of that agreement. Upon review of the record the Court concludes that plaintiff has offered sufficient factual support of its claim to withstand a motion for summary judgment on the ground of insufficient evidence to make a submissible case on the issue of concerted activity. Whether plaintiff will meet its burden of proving such an agreement can only be determined at the close of all the evidence. Accordingly, defendant's motion for summary judgment on Counts III, IV and V is denied.

Prima facie tort
In Count VI, plaintiff claims that the manner of defendant's termination of the distributorship agreement constitutes a prima facie tort under Missouri law. The elements of this tort as recognized in Missouri are (1) an intentional, lawful act by *374 the defendant; (2) an intent to cause injury to the plaintiff; (3) injury to the plaintiff; and (4) an absence of justification or insufficient justification for the defendant's act. Porter v. Crawford & Co., 611 S.W.2d 265 (Mo.Ct.App.1980). If the plaintiff makes a submissible case on these four elements, the Court must then determine (a) whether the defendant's actions were tortious by application of a "balance of interest" test which includes four factors and (b) whether another nominate tort remedy is available to the plaintiff. Lundberg v. Prudential Insurance Co. of America, 661 S.W.2d 667, 670 (Mo.Ct.App.1983) (Lundberg); Costello v. Shelter Mutual Insurance Co., 697 S.W.2d 236, 238 (Mo.Ct.App.1985) (Costello).
For summary judgment, defendant argues first, that plaintiff cannot establish a submissible case on the prima facie tort element of intent to cause injury, and second, that the prima facie tort doctrine is not applicable because other traditional tort remedies are available.
In order to satisfy the intent element of prima facie tort, the plaintiff must prove "an actual intent on defendant's part to injure plaintiff, not merely to do the act purportedly resulting in the claimed injury." Lundberg, 661 S.W.2d at 670; Dowd v. General Motors Acceptance Corp., 685 S.W.2d 868, 872 (Mo.Ct.App.1984); see also Bandag of Springfield, Inc. v. Bandag, Inc., 662 S.W.2d 546, 556 (Mo.Ct.App.1983) (on alternative motion for rehearing or for transfer) (where defendant franchisor had only a profit motive in granting an additional franchise to plaintiff franchisee's former customer, rather than malice toward plaintiff, intent element of prima facie is not met).
The Court concludes that in the present case plaintiff's allegations that defendant, in conspiring with plaintiff's salesmen and in terminating the distributorship without proper notice had the actual intent of crippling plaintiff's sales ability so that defendant's new distributor could steal some of plaintiff's customers, if proven, would satisfy the intent element of prima facie tort.
It is more difficult to evaluate defendant's second argument. The Missouri courts have held that "if an intentional act has been recognized as being tortious, it cannot be a `lawful' ... act [as required by the first element of prima facie tort]. Alternative pleading of a prima facie tort cause of action is not objectionable, ... but if at the close of all the evidence, the plaintiff's proof justifies submission of his cause as a recognized tort, the prima facie tort may not be submitted." Bandag, 662 S.W.2d at 554; see also Costello, 697 S.W.2d at 238.
In Bandag, the appellate court held that the plaintiff had made a submissible case under the nominate tort of interference with business relations and that it was therefore error to submit a prima facie tort claim to the jury. The Court believes that in the present case a corresponding holding is warranted. The elements of tortious interference with business relations as recognized in Missouri are: (1) a contract or valid business relationship or expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from defendant's conduct. Bandag, 662 S.W.2d at 554. Upon review of the record, the Court concludes that the evidence which plaintiff argues supports its claim of prima facie tort specifically, defendant's alleged intent to injure plaintiff's ability to service its customers would also support a claim of tortious interference of business relations.
The Court is mindful that Bandag was decided on the basis of the evidence actually adduced at trial rather than on the basis of a record on summary judgment.[5] However, *375 in the present case the insubmissibility of plaintiff's prima facie tort claim, because another tort is available, can properly be determined at this stage in the proceedings. The Court is convinced that the Missouri courts would so hold.
Accordingly, defendant's motion to dismiss Count VI of plaintiff's complaint is granted.

ORDER
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED that plaintiff's motion to dismiss Count II (breach of contract), and Counts III, IV and V (federal trademark violations) of defendant's Second Amended Counterclaim, converted to a motion for summary judgment in accordance with Rule 12(c), Fed.R.Civ.P., is denied.
IT IS FURTHER ORDERED that defendant's motion for partial summary judgment on the issue of damages in Count I (breach of contract and breach of duty of fair dealing), and for summary judgment on Count II (punitive damages for breach of contract and breach of duty of fair dealing), Counts III, IV and V (federal antitrust violations), and Count VI (prima facie tort), of plaintiff's First Amended Complaint, is granted in part and denied in part as to Count I, denied as to Counts III, IV and V, and granted as to Count VI.
IT IS FURTHER ORDERED that defendant's motion in limine filed October 5, 1984 and plaintiff's motion in limine filed October 12, 1984 are denied as moot.
NOTES
[1] Plaintiff entitled its motion as an application for a preliminary hearing.
[2] See order of this Court dated February 19, 1986.
[3] Section 400.1-102(3) provides:

The effect of provisions of [Missouri's Uniform Commercial Code] may be varied by agreement.
Section 400.2-709(1)(a) provides:
(1) When the buyer fails to pay the price as it becomes due the seller may recover, ... the price
* * * * * *
(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.
[4] The Supreme Court in Monsanto declined to reach the question of whether manufacturer-distributor concerted activity to fix resale prices should always be unlawful, as is now the law, or should rather be judged under the rule-of-reason analysis; the Court indicated that in a proper case it might reconsider the current law. 104 S.Ct. 1469 n. 7.
[5] The Court is also aware that on motion for rehearing in Bandag the Missouri Court of Appeals offered an alternate justification for its holding, namely that the plaintiff failed to make a submissible case of prima facie tort. The doctrine that prima facie tort will not lie if the plaintiff could have brought another nominate tort is still the law in Missouri. See Costello v. Shelter Mutual Insurance Co., 697 S.W.2d 236, 239 (Mo.Ct.App.1985). The Court further notes that the prima facie tort doctrine is disfavored by Missouri courts. See Bandag, 662 S.W.2d at 556.