**Patrick K. BISHOP, Plaintiff–Appellant,**

v.

**SHELTER MUTUAL INSURANCE COMPANY, Defendant–Respondent.**

No. 25759.

Missouri Court of Appeals, Southern District, Division Two.

March 31, 2004.

---

Byan O. Wade, Ginger K. Gooch, Husch & Eppenberger, LLC, Springfield, for appellant.

Denise K. Drake, Gina Gupta Srivastava, Spencer Fane Britt & Browne LLP, Kansas City, for respondent.

KENNETH W. SHRUM, Judge.

Patrick Bishop ("Plaintiff") sued Shelter Mutual Insurance Company ("Shelter") and its employee, James Matlock, after Shelter canceled its agency contract with Plaintiff. The first four counts sought damages from Shelter on counts entitled (1) wrongful termination; (2) breach of the covenant of good faith and fair dealing; (3) tortious interference with contract; and (4) intentional infliction of emotional distress.[1] The court entered summary judgment for Shelter and against Plaintiff on these four counts. Plaintiff appeals from that part of the summary judgment that ruled against him on the good faith and fair dealing count, the tortious interference with contract claim, and the intentional emotional distress claim. We affirm.

## STANDARD OF REVIEW

 "At any time, a party against whom a claim ... is sought may move with or without supporting affidavits for a summary judgment as to all or any part of the pending issues." Rule 74.04(b). The key to summary judgment is the undisputed right to a judgment as a matter of law. *ITT Commercial Fin. v. Mid–Am. Marine*, 854 S.W.2d 371, 380[12] (Mo.banc 1993). Our review of a trial court's grant of summary judgment is essentially *de novo* because the propriety of the court's action is purely an issue of law founded solely upon the record submitted and the applicable law. *Id.* at 376[4,6].

## EMPLOYMENT AT–WILL DOCTRINE

The breadth of Missouri's employment at-will doctrine is at issue here. Under that doctrine an employer can discharge—with or without cause—an at-will employee and still not be subject to liability for wrongful discharge. *Dake v. Tuell*, 687 S.W.2d 191, 193[2] (Mo.banc 1985); *Williams v. Kansas City Pub. Serv. Co.*, 294 S.W.2d 36, 38–39 (Mo.1956); *Douglas*

---

1. The fifth count (which was against Matlock) is not before this court. Although the trial court adjudicated Plaintiff's claims against Shelter, it left Plaintiff's claim against Matlock unresolved. Even so, the summary judgment entered was appealable in that the court made "an express determination that there [was] no just reason for delay," per Rule 74.01(b). *See Committee For Educ. Equality v. State*, 878 S.W.2d 446, 450–53 (Mo.banc 1994). As to that part of the judgment favorable to Shelter on the wrongful termination count, it is unappealed and is, therefore, a final judgment.

*v. Metro. Life Ins. Co.,* 297 S.W. 87, 90 (Mo.App.1927).

■■■■ As with most general rules, there are exceptions to this one. For instance, wrongful discharge may be actionable if there is a contract and a breach thereof, i.e., a termination that violates a contractual clause relating to the duration of employment or a clause preventing termination only for cause. *Dake,* 687 S.W.2d at 193. Moreover, if the discharge violates a statutory provision or public policy, then a fired employee may maintain a suit for wrongful discharge. *Id.; Brenneke v. Dept. of Mo., Veterans of Foreign Wars of U.S. of Am.,* 984 S.W.2d 134, 137–38 (Mo. App.1998).

## FACTS

In 1983, Shelter contracted with Plaintiff, designating him as its "agent." Under the written agency agreement, Shelter authorized Plaintiff to "obtain applications for [its] insurance" and "collect and forward" insurance premiums for Shelter in the Branson, Missouri, area. A general provision in the contract obligated Plaintiff to provide "other insurance service" for Shelter. Shelter agreed to pay commissions on Plaintiff's "Agent Policies according to a schedule while [the] Agreement [was] in force." The agreement recited that Plaintiff's status with Shelter was that of "independent contractor." Moreover, it provided that the Branson "insurance business" (tangible and intangible property) belonged solely to Shelter, including all applications, current policies, and renewals. Another provision, denominated Termination of Agreement, read: "This Agreement may be terminated by either [Plaintiff or Defendant] at any time upon written notice to the other party." The parties operated under this agreement until 2001.

On February 12, 2001, Shelter terminated its agency agreement with Plaintiff by giving him written notice. Although Shelter's stated reason for the termination was Plaintiff's failure to report certain claims, when Plaintiff sued Shelter and Matlock, he alleged his agency contract was terminated for other "vindictive [and] malicious" reasons. At issue on this appeal are Plaintiff's counts against Shelter for breach of good faith and fair dealing, tortious interference with contracts, and intentional infliction of emotional distress.

In its summary judgment motion, Shelter essentially argued that Plaintiff had no cause of action pursuant to these legal theories because the "employment" was at will, i.e., the agreement could be terminated at any time with or without cause. Shelter claimed that Plaintiff could not subvert the employment at-will doctrine by characterizing his claims as something other than a wrongful discharge. The trial court agreed with Shelter's position and granted it summary judgment as requested. This appeal followed.

## DISCUSSION AND DECISION

■■■■ Plaintiff's first point maintains the trial court erred in granting summary judgment "because Missouri recognizes a cause of action for breach of the covenant of good faith and fair dealing even where the employment relationship is terminable at-will." Plaintiff bases his argument on the general rule that there is an implied covenant of good faith and fair dealing in *all* contracts. *See* RESTATEMENT (SECOND) OF CONTRACTS. § 205 (1981) He further argues that summary judgment was inappropriate because material issues of fact remain as to Defendant's bad faith in its dealings with Plaintiff, including his termination. Plaintiff relies heavily on two cases to support his Point I arguments.

First, he cites *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555 (Mo.App.1999). There, Sloan operated under an "agent contract" with Bankers Life. *Id.* at 558. He started with Bankers Life in 1953 and worked strictly on a commission basis. He set his own hours, paid his own expenses, and maintained his own office at his expense. Ultimately, a dispute arose between Bankers Life and him over "turning 65 lists," which Sloan used to sell supplemental Medicare insurance. When Sloan sued Bankers Life, he asserted multiple claims, including a count for breach of the duty of good faith and fair dealing. Significantly, however, Sloan's suit was filed *before* Bankers Life terminated his agency contract. Moreover, the issue of whether Bankers Life owed a duty of good faith and fair dealing to Sloan was not addressed on appeal. Specifically, the *Sloan* court noted:

> "Bankers Life elected not to cross-appeal the denial of its motion for JNOV. Bankers Life, however does not concede the submissibility of [Sloan's] claim [for breach of the duty of good faith and fair dealing], arguing that [Sloan's claim] was not submissible, and did not constitute a cause of action. These arguments are mentioned only as support for affirming the grant of a new trial as to the entire claim. It is interesting that Banker's Life did not appeal the denial of the JNOV, because if [Sloan] cannot make a submissible claim, it would not be expedient to retry the case. *The issues related to the validity and submissibility of [Sloan's] claim [for breach of good faith and fair dealing] are not significantly developed by the parties in this appeal, and we decline to wade into those murky waters, without the benefit of extensive and focused briefing.*"

*Id.* at 568, n. 8 (emphasis supplied).

We find the *Sloan* case factually inapposite, in that the good faith and fair dealing suit was filed while Sloan was still working under his agency contract. Those are not the facts of this case. More than that, the *Sloan* court refused to address the issue of whether a party operating under a terminable at-will agency contract with an insurance company can maintain a cause of action against the company for breach of an implied duty of good faith and fair dealing. In sum, *Sloan* does not support Plaintiff's claim.

Plaintiff's second case is *Machine Maintenance & Equipment Co., Inc. v. Cooper Indus., Inc.*, 634 F.Supp. 367 (E.D.Mo. 1986). There, Machine Maintenance sold, repaired, and replaced Cooper's compressors under its Gardner–Denver product line. The parties operated under a distributorship agreement that prescribed different procedures and time frames for termination, depending on whether termination was for cause or without cause. After Cooper terminated the agreement for alleged cause, Machine Maintenance's six-count suit against Cooper included a claim that Cooper had breached an implied duty of good faith and fair dealing. In denying Cooper's motion for summary judgment, Judge Gunn concluded generally that, under Missouri law, parties to a distributorship agreement have an obligation of good faith and fair dealing. *Id.* at 371. Specifically, he held that Machine Maintenance could not base its claim for breaching the duty of good faith and fair dealing upon a "without cause" termination by Cooper (as that was a right specifically reserved by the contract), yet "[i]f in exercising this right ... [Cooper] acted in bad faith to interfere with [Machine Maintenance's] rights under the contract, a cause of action for breach of the duty of fair dealing would arise." *Id.* at 371–72. As authority for his latter pronouncement, Judge Gunn relied on a case that applied South Carolina law,

*deTreville v. Outboard Marine Corp.,* 439 F.2d 1099, 1100 (4th Cir.1971).

Plaintiff's reliance on *Cooper* is misplaced. He fails to recognize that although Missouri policy, both at common law and by statute, is to protect franchisees and those operating under distributorship agreements from the onerous effects of bad faith at-will termination, *see Ridings v. Thoele, Inc.,* 739 S.W.2d 547, 548–49 (Mo.banc 1987); *Armstrong Bus. Services, Inc. v. H & R Block,* 96 S.W.3d 867, 877–79 (Mo.App.2002); *Beebe v. Columbia Axle Co.,* 233 Mo.App. 212, 117 S.W.2d 624, 628–29 (1938), that rule is unique to franchise/distributorship type agreements. This is explained in *Armstrong* as follows:

> "Because of the large investment of capital, time, and effort, the duration of a franchise agreement is very important to a potential franchisee. If the franchisor is totally free to terminate and deny renewal of a franchise after a relatively short duration, the franchisee is significantly disadvantaged because the equity built up in the franchisee's business is jeopardized. Missouri policy, however, protects franchisees at termination of franchise relationships."

96 S.W.3d at 878 (citations omitted).

Here, neither Plaintiff's petition, nor his response to Shelter's summary judgment motion, invoked the franchisee or distributorship protection described in *Armstrong.* Since Plaintiff relies so heavily on *Cooper,* he apparently would have us find he is entitled to the protection from bad faith termination afforded franchisees or distributors. We find no authority, however, for expanding the "franchisee protection" rule as requested, and the rationale of *Cooper* does not suggest that result. As already noted, *Cooper* relied heavily on *deTreville,* 439 F.2d 1099, which applied South Carolina law. Significantly, South Carolina makes the same fundamental distinction between employment at-will issues and franchise or distributorship agreements, as does Missouri. *Compare Prescott v. Farmers Telephone Coop., Inc.,* 335 S.C. 330, 516 S.E.2d 923 (1999), and *Carolina Cable Network v. Alert Cable T.V.,* 316 S.C. 98, 447 S.E.2d 199 (1994). Based on the record presented here, neither *Cooper* nor *Sloan* supports Plaintiff's point relied on.

■ Since Plaintiff's principal case authority does not support his position, we look elsewhere to analyze his arguments. As a general statement, a covenant of good faith and fair dealing is present in every contract. *Mo. Consol. Health v. Cmty. Health Plan,* 81 S.W.3d 34, 45 (Mo.App. 2002); *Martin v. Prier Brass Mfg. Co.,* 710 S.W.2d 466, 473 (Mo.App.1986). If such a term is not expressed in the contract, then it will be implied. 23 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 63:22 at 506 (4th ed.2002).

■ Another general principle is that "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." 23 Williston § 63:22 at 516; *see also Kassebaum v. Kassebaum,* 42 S.W.3d 685, 696 (Mo. App.2001) (finding, "there can be no implication where the subject is completely covered by the contract"); Restatement (Second) of Contracts § 205 reptr's note at 103 (citing *Sessions, Inc. v. Morton,* 491 F.2d 854 (9th Cir.1974)).

■ Missouri has adopted the general principle of implied covenants of good faith and fair dealing as expressed in the Restatement (Second) of Contracts § 205 (1981). *Mo. Consol. Health,* 81 S.W.3d at 45 n. 3. However, Missouri also follows the

employment at-will doctrine. *Dake*, 687 S.W.2d at 193. As such, the reason for an employee's termination is inconsequential and irrelevant, unless the firing violates a statute or public policy. *Emerick v. Mut. Ben. Life Ins. Co.*, 756 S.W.2d 513, 522 (Mo.banc 1988); *Dake*, 687 S.W.2d at 193; *Costello v. Shelter Mut. Ins. Co.*, 697 S.W.2d 236, 237 (Mo.App.1985). It is clear that "Missouri law concerning at will employees may not be circumvented by an employee who alleges a contract of good faith and fair dealing between the employer and employee." *Neighbors v. Kirksville College of Osteopathic Medicine*, 694 S.W.2d 822, 824[2] (Mo.App.1985).

 In summary, the Missouri employment at-will doctrine expressly prohibits any consideration of the *implied* covenant of good faith and fair dealing (inherent in all contracts) *when an employer is sued for terminating the employee.* This follows because the implied covenant cannot be used to contradict or override the *express* employment terms contained in a contract, i.e., that an employee can be terminated for any cause. When a contract does not provide a definite period for employment and fails to include provisions related to reasons for termination, the good faith and fair dealing covenant cannot be implied to supersede the express agreement that the employee can be fired without cause.

We pause to acknowledge that the employment relationship here is not that typically found in at-will cases. The agency contract provided that Plaintiff was an independent contractor, but the relationship could be terminated upon written notice. Such agreements have been characterized as agency contracts "terminable at will." *Costello*, 697 S.W.2d at 237. In such situations, whether labeled an independent contractor or employee, the relationship and termination of it is governed by general principles enunciated in the at-will doctrine cases. *See, e.g., Emerick*, 756 S.W.2d at 521–22; *Paisley v. Lucas*, 346 Mo. 827, 143 S.W.2d 262, 270–71 (1940); *Costello*, 697 S.W.2d at 237. In apparent recognition of this, both parties seem to agree that the case is governed by the employment at-will doctrine.

Mindful that Plaintiff asserts that his petition alleged facts which, if proven, are *evidence* of Defendant's bad faith, we turn to it to learn the essence of his claim. From Plaintiff's petition we discover that his claimed breach of good faith and fair dealing obligation is "*founded upon* an independent and intentional wrongful *act* by Robert Feller [Defendant's vice-president of marketing]." (Emphasis supplied.) The petition also alleges that Feller's alleged wrongful *act* was that he "by-passed all chains of command in control of termination and discipline when he directed the State Sales manager ... to terminate Plaintiff's agency agreement."

From these and other allegations in his petition, we can only conclude that the gravaman of Plaintiff's claim is entitlement to damages for wrongful termination. As we understand it, Plaintiff's position is that although Defendant would ordinarily have had the right to terminate his contract for cause, or for no cause, without incurring liability, Plaintiff could avoid that rule by alleging facts, which if proven, would establish Defendant breached an implied duty of good faith and fair dealing. That argument runs counter to Missouri law. *See Neighbors*, 694 S.W.2d at 824.

On this record, Shelter's reason for terminating Plaintiff's terminable at-will agency contract, even if in bad faith or under false pretenses, is irrelevant since the termination did not violate a statute or public policy. *Emerick*, 756 S.W.2d at 522; *Dake*, 687 S.W.2d at 193; *Costello*, 697 S.W.2d at 237. Although Plaintiff claims

that Defendant acted in bad faith in breaching many contract provisions, the entire basis of his cause of action is that he was wrongfully terminated. The employment at-will doctrine cannot be so easily subverted.[2] *Hanrahan v. Nashua Corp.,* 752 S.W.2d 878, 883 (Mo.App.1988); *Neighbors,* 694 S.W.2d at 824.

Based on the cases and principles discussed above, we conclude the trial court did not err in rendering summary judgment for Shelter on his claim that Shelter's termination of his at-will agency contract had breached an implied covenant of good faith and fair dealing. As a matter of Missouri law, such a cause of action did not lie here since Shelter's termination did not violate public policy or any statutory provision. Point I is denied.

We turn now to Plaintiff's remaining two points. In deciding Point I, we characterized Plaintiff's claim as one essentially alleging a wrongful discharge. That characterization applies equally to Plaintiff's claims of tortious interference and intentional infliction of emotional distress. It would subvert the law of this state to allow Plaintiff's claims for termination under the guise of tortious interference or emotional distress.[3] *Hanrahan,* 752 S.W.2d at 882–84; *Neighbors,* 694 S.W.2d at 823–24.

The trial court determined that Plaintiff had no valid cause of action. As a matter of law, we conclude that the trial court did not err in entering summary judgment for Defendant on this basis. The judgment of the trial court is affirmed.

PARRISH, J. and BATES, J., concur.

---

2. We need not decide whether Plaintiff could have sued Defendant prior to his termination. Plaintiff alleged that from the outset of the agreement, Defendant breached several provisions of the contract. If this were indeed true, then Plaintiff theoretically could have filed suit while still employed for Defendant's breach of the express provisions of the contract and may have been able to assert a claim for breach of the implied covenant of good faith and fair dealing as well. He has failed to explain why he accepted and acquiesced to such alleged breaches. This is further evidence that Plaintiff simply seeks to escape the harsh realities of the at-will doctrine. However, this court need not "wade into those murky waters." *Sloan,* 1 S.W.3d at 568 n. 8.

3. In fact, the emotional distress claim expressly pleaded that it was based upon the termination of the agreement. Plaintiff "may not maintain an action for emotional distress resulting from [his] termination." *Neighbors,* 694 S.W.2d at 824[1]. Plaintiff's tortious interference claim likewise fails for additional reasons. First, the agent agreement gave Defendant the power to terminate the agreement, i.e., Plaintiff could not prove a lack of justification. *See Hanrahan,* 752 S.W.2d at 882–83. Second, Plaintiff's allegations pertained mainly to interference with contracts between the insureds and him, his loss of "good will," and lost income and benefits. The contract specifically provided that Defendant owned all tangible and intangible property including renewals. Also, Plaintiff had no "right" to future income and benefits because the relationship was terminable at will. Defendant cannot interfere with contracts or business expectancies that it owns. Moreover, Plaintiff could not show a valid expectancy in rights to future income or benefits because he had no such rights.