# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1530
_____

Thomas Kmak

*Plaintiff - Appellant*

v.

American Century Companies, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 11, 2014
Filed: June 5, 2014

_____

Before LOKEN, BYE, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Thomas Kmak appeals the district court's dismissal of Kmak's second amended complaint ("Complaint") for failure to state a claim upon which relief could be granted. Because Kmak sufficiently alleged that American Century Companies, Inc. ("American Century") retaliated against him in violation of public policy, we reverse and remand.

## I

American Century is an investment management firm. It hired Kmak in 1990 to develop its Retirement Plan Services division. Beginning in 1998, American Century adopted a series of stock option plans, enabling Kmak and other employees to purchase America Century's privately held common stock. On October 10, 2003, and April 28, 2005, Kmak exercised these options and purchased a total of 238,000 shares. As a shareholder, Kmak received an annual dividend per share at the end of every year.

Each stock purchase was governed by a "Stock Restriction Agreement for Exercise of Stock Option" ("Stock Restriction Agreement"). The Stock Restriction Agreement contained the following provision:

> (h) Call Rights on Shares of Common Stock.
>
> (i) The Company will have the right to call any of the Shares for repurchase, in exchange for payment in cash of the most recent value of the Shares as determined in accordance with the valuation procedures provided below, at any time following the Purchaser's disability, death, or termination of, or retirement from, the Company's employment . . . . The Company's right to call the Shares hereunder shall be a continuing right.

Between 1998 and 2003, American Century operated the Retirement Plan Services division as a joint venture with JPMorgan. In 2003, JPMorgan purchased the division outright, and Kmak left American Century to work for JPMorgan. When he left American Century, Kmak had specific conversations with American Century's CEO, Bill Lyons, who assured Kmak American Century would not exercise its right

of redemption for any shares Kmak had purchased unless Kmak began working for one of American Century's competitors.

In 2007, Kmak left JPMorgan to start his own business, Fiduciary Benchmarks, which is not an investment management firm and does not compete with American Century. Kmak considered selling his American Century stock at that time, but decided against it, believing American Century would only exercise its right of redemption if he began working for a competitor.

Several years later, American Century initiated arbitration proceedings against JPMorgan to resolve a dispute related to the Retirement Plan Services division. Kmak was subpoenaed to testify by JPMorgan, which did not subpoena any other current or former employee of American Century who held stock in the company. Kmak provided sworn testimony which, allegedly, was not helpful to American Century's position. Ultimately, American Century prevailed in the arbitration and won a $373 million judgment against JPMorgan.

In May 2011, shortly after Kmak testified, American Century sent Kmak a letter to "remind" him American Century had the right to call his shares at any time. To Kmak's knowledge, this reminder was not sent to any other American Century shareholder. When Kmak inquired about the letter, he received assurances American Century would not be calling his shares. Consistent with this information, American Century stated in a December 5, 2011, letter that Kmak would receive his regular annual stock dividend.

Mere days later, between December 6 and 9, 2011, American Century's arbitration award was finalized and/or paid. Kmak alleges this prompted American Century to change its position. On December 9, 2011, American Century notified Kmak it was calling his shares for repurchase. As a result, Kmak did not receive either of the two stock dividends issued in 2011, which would have totaled more than

$540,000. To Kmak's knowledge, American Century did not exercise its call rights with respect to any other shareholder.

Kmak filed suit against American Century on August 28, 2012, asserting a single claim for breach of the implied covenant of good faith and fair dealing. Kmak alleged American Century called his shares in retaliation for his testimony on JPMorgan's behalf in the arbitration. American Century moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing it could not be held liable because it had an unqualified contractual right to call its shares "at any time."

The district court granted American Century's motion to dismiss, reasoning American Century "was entitled under the 2003 and 2005 Stock Restriction Agreements to call Kmak's stock for repurchase 'at any time' after his employment with the company had ended." As a result, the district court concluded Kmak's allegations failed to state a plausible claim for relief under Missouri law.

II

We review "*de novo* the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the plaintiff's factual allegations as true and construing all reasonable inferences in favor of the plaintiff." Alexander v. Hedback, 718 F.3d 762, 765 (8th Cir. 2013).

"Missouri law implies a covenant of good faith and fair dealing in every contract." Farmers' Elec. Co-op., Inc. v. Mo. Dep't of Corrs., 977 S.W.2d 266, 271 (Mo. 1998). To establish a breach of the covenant of good faith and fair dealing, "the plaintiff has the burden to establish that the defendant 'exercised a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the plaintiff] the expected benefit of the contract.'" Lucero v. Curators of Univ. of Mo., 400 S.W.3d 1, 9-10 (Mo. Ct. App.

2013) (quoting <u>Mo. Consol. Health Care Plan v. Cmty. Health Plan</u>, 81 S.W.3d 34, 46 (Mo. Ct. App. 2002)). To sufficiently plead such a breach, Kmak has the burden of pleading that American Century "exercised its discretion in a manner contrary to good faith and fair dealing." <u>Mo. Consol. Health Care Plan</u>, 81 S.W.3d at 48.

Under Missouri law, a plaintiff properly pleads a breach of the implied covenant of good faith and fair dealing when he alleges the defendant's action violated public policy or a statute. <u>Bishop v. Shelter Mut. Ins. Co.</u>, 129 S.W.3d 500, 507 (Mo. Ct. App. 2004) (concluding the defendant did not breach the implied covenant of good faith and fair dealing "since [the plaintiff's] termination did not violate public policy or any statutory provision."). In Missouri, retaliating against an individual for providing truthful testimony in a quasi-judicial proceeding violates public policy. <u>See</u> <u>Drury v. Mo. Youth Soccer Ass'n</u>, 259 S.W.3d 558, 567 (Mo. Ct. App. 2008) ("[I]t is well-settled that public policy requires that witnesses at trials shall not be restrained by the fear of being vexed by reprisals from those who are dissatisfied with their testimony.") (citing <u>Laun v. Union Elec. Co. of Mo.</u>, 166 S.W.2d 1065, 1072 (Mo. 1942)); <u>see also</u> <u>L'Orange v. Med. Protective Co.</u>, 394 F.2d 57, 62 (6th Cir. 1968) (holding an insurance company's cancellation of a policy as punishment against a policyholder who testified in a judicial proceeding was "manifestly . . . contrary to public policy").

Here, Kmak alleged American Century retaliated against him for his testimony in the arbitration with JPMorgan. Specifically, the Complaint alleged (1) Kmak received stock options pursuant to his employment with American Century; (2) Kmak testified at JPMorgan's request in its arbitration against American Century in March 2011; (3) in May 2011, Kmak received a letter from American Century reminding him it had a right to call his shares at any time; (4) American Century's arbitration award became final between December 6, 2011, and December 9, 2011; (5) American Century exercised its call rights only with respect to Kmak's shares on December 9, 2011, one day before dividends were to be issued; (6) Kmak reasonably expected

American Century would exercise its discretion in good faith; and (7) American Century exercised its call rights "for the purpose of retaliating for his deposition and Arbitration testimony."

Because Missouri's public policy required American Century not to retaliate against Kmak for testifying in the arbitration proceeding, Kmak has alleged a breach of the implied covenant of good faith and fair dealing sufficient to withstand a Rule 12(b)(6) motion. The district court concluded Kmak could not reasonably believe he would not suffer retaliation for testifying truthfully in the arbitration because the Stock Restriction Agreements "do not concern testimony in an arbitration arising years later." However, Kmak did have a reasonable expectation American Century would not exercise its discretionary authority in a manner which would violate public policy. It was unnecessary for the Stock Restriction Agreements to reference public policy for Kmak's expectation to be reasonable. Thus, it is fair to accept, at the Rule 12(b)(6) stage, that Kmak had a reasonable expectation American Century would not act in violation of public policy with respect to his shares. American Century may have had the right to call Kmak's shares "at any time," but it did not have the right to call those shares for any reason, if doing so would violate public policy.

In reaching its ruling, the district court relied on Nemec v. Shrader, 991 A.2d 1120 (Del. 2010). In Nemec, the plaintiffs, former corporate officers, sued the defendants corporation and board members claiming the board breached the corporation's stock plan's implied covenant of good faith and fair dealing when the board redeemed the plaintiffs' stock after their post-retirement put rights had expired, but before selling the corporation's government business division. Id. at 1122-25. If the defendants had waited to redeem the stock until after selling the government business division, the plaintiffs would have realized an additional $60 million in profits. Id. at 1124-25. Instead, that benefit accrued to the defendants. Id. The Delaware court rejected the plaintiffs' claim, reasoning the defendants "did nothing unfair and breached no fiduciary duty by causing the Company to exercise its

-6-

absolute contractual right to redeem the [plaintiffs'] shares at a time that was most advantageous to the Company's working stockholders." Id. at 1127.

However, Nemec is inapposite to the present case. There, the defendants were simply accused of exercising their discretion at a time which was economically disadvantageous to the plaintiffs. No violation of public policy was alleged. Here, by contrast, American Century did not merely act at an economically disadvantageous time to Kmak. Instead, American Century is alleged to have exercised its right to recall Kmak's shares in retaliation for his testimony in the arbitration proceeding. This alleged retaliation would violate public policy and renders Nemec inapplicable. To the extent the district court dismissed Kmak's Complaint for merely alleging American Century acted arbitrarily, vindictively, or contrary to Kmak's reasonable expectations about matters other than public policy, such dismissal was proper. Cf. Bishop, 129 S.W.3d at 506-07 (stating the implied covenant does not apply to allegations in the at-will employment context when an employer allegedly terminates a contract in bad faith or because of ill will). But, to the extent Kmak has alleged retaliation in violation of public policy, he has sufficiently alleged a breach of the implied covenant at this stage, and, thus, the district court erred in dismissing Kmak's Complaint.

American Century is critical of Kmak's comparison of his case to employment discrimination cases, but the analogy is a useful one. The stock options at issue were not merely contractual provisions. Instead, they were compensation for Kmak's employment with American Century. Missouri's employment-at-will doctrine generally permits an employer to discharge an at-will employee, with or without cause, without liability for wrongful discharge. Sivigliano v. Harrah's N. Kan. City Corp., 188 S.W.3d 46, 48 (Mo. Ct. App. 2006). However, certain exceptions to the doctrine have been recognized, including the public policy exception, which establishes a cause of action for an at-will employee who has been terminated in violation of public policy. Dunn v. Enterprise Rent-A-Car Co., 170 S.W.3d 1, 6 (Mo.

Ct. App. 2005). As discussed above, one such public policy is for witnesses to be free from fear of reprisal for their testimony in judicial proceedings. Drury, 259 S.W.3d at 567. Thus, accepting Kmak's allegations as true, it was improper for American Century, acting in a manner in violation of public policy, to deny Kmak compensation earned through his employment.

American Century also argues "Kmak utterly fails to allege plausible facts demonstrating any causation." We disagree. Accepting Kmak's allegations as true and construing all reasonable inferences in his favor, these facts sufficiently allege a causal connection between Kmak's testimony in the arbitration proceeding and American Century's decision to call his shares. First, there is the allegation of American Century's veiled threat, reminding Kmak it could recall his shares at any time, after he testified in the arbitration proceeding. More telling is the allegation that American Century elected to call only Kmak's shares just 1-3 days after its arbitration award was confirmed and/or paid. The reasonable inference here is that American Century waited to retaliate until after the arbitration was finalized, so as not to jeopardize its position in that proceeding.

Further, any intimation that Kmak suffered no damages because American Century could call Kmak's shares "at any time" also fails. Much like an at-will employee terminated in a manner violating public policy would suffer damages, here, Kmak has similarly alleged damages resulting from a violation of public policy, namely, American Century's retaliation. As such, he has alleged damages sufficient to survive a Rule 12(b)(6) challenge.

III

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

_____