# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-2950

_____

Pietoso, Inc., a Missouri corporation, individually and on behalf of all those similarly situated, doing business as Cafe Napoli

*Plaintiff - Appellant*

v.

Republic Services, Inc., A Delaware corporation; Allied Services, LLC, A Deleware limited liability company, doing business as Allied Waste Services of Bridgeton

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 13, 2021
Filed: July 9, 2021

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Pietoso, Inc. d/b/a Café Napoli appeals part of the district court's order and judgment dismissing with prejudice Pietoso's complaint against Republic Services,

Inc. and Allied Services, LLC d/b/a Allied Waste Services of Bridgeton ("Defendants").[1]  We reverse.

## I.

Pietoso operates Café Napoli in Clayton, Missouri.[2]  In April 2011, Pietoso entered into an agreement ("Agreement") with Allied Services, a subsidiary of Republic Services, for waste-removal services at the restaurant.  In the Agreement, Pietoso agreed to pay a basic-service rate of $323 per month for trash pickup four times a week.  Pietoso was billed monthly for these services.  The Agreement had an initial thirty-six-month term and automatically renewed for successive thirty-six-month terms.  If Pietoso terminated the Agreement before the end of a thirty-six-month term for a reason other than Defendants' breach of the Agreement, Pietoso would have to pay liquidated damages.

Pursuant to a provision in the Agreement entitled "Rate Adjustments," Defendants had the right to increase the basic-service rate without Pietoso's consent for any one of five enumerated, cost-related reasons ("Unilateral Reason").  They also could increase the basic-service rate with Pietoso's consent for any other reason ("Optional Reason").  The Agreement specified that this consent "may be evidenced verbally, in writing or by the parties' actions and practices."  Pietoso would suffer no consequences under the Agreement if it refused to consent to an Optional Reason rate increase—Defendants still had to provide Pietoso the same services and could not terminate the Agreement early.

---

[1]Pietoso also appeals the district court's denial of its motion to alter or amend the dismissal order.  Because we reverse the dismissal in relevant part, Pietoso's appeal from the district court's denial of its motion to alter or amend is moot.  *See, e.g.*, *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).

[2]The facts in this section are taken from Pietoso's operative complaint and the exhibits attached to it.  *See Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1031 n.2 (8th Cir. 2019); *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 850 (8th Cir. 2020).

Since April 2011, Defendants have regularly increased Pietoso's monthly basic-service rate for the same waste-removal services provided four times a week such that the rate went from $323 in April 2011 to $870.25 by August 2018. The monthly invoices sent to Pietoso that reflected rate increases never indicated that a given increase was for an Optional Reason that Pietoso was not obligated to pay. To the contrary, the increases were "always presented" as increases for a Unilateral Reason that Pietoso was obligated to pay. Accordingly, Pietoso believed that the increases were for Unilateral Reasons and paid them in accordance with its obligations under the Agreement.

Pietoso continued paying the monthly invoices until early 2019. At that time, Pietoso contacted Defendants to complain about the increases to its basic-service rate. In response, Defendants offered to reduce Pietoso's basic-service rate from $870.25 to $280, a figure below Pietoso's initial April 2011 basic-service rate. For this reason, Pietoso suspected that Defendants repeatedly had increased the basic-service rate for Optional Reasons without obtaining its consent, thereby breaching the Agreement.

Accordingly, Pietoso terminated the Agreement and commenced this putative nationwide class action, claiming breach of contract.[3] Defendants moved to dismiss, arguing that Pietoso had failed to state a claim for breach of contract, *see* Fed. R. Civ. P. 12(b)(6), because Pietoso pleaded that it was aware of and paid the rate increases for approximately eight years, thereby consenting by its "actions and practices" to the increases. The district court agreed and dismissed Pietoso's complaint with prejudice. Pietoso appeals, challenging the dismissal of its breach-of-contract count.

---

[3]Pietoso's complaint also included a declaratory-judgment count, but Pietoso does not challenge the district court's dismissal of that count.

## II.

We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in favor of the nonmovant. *Trone Health Servs.*, 974 F.3d at 850. To survive a motion to dismiss, a plaintiff must allege facts that, accepted as true, state a claim to relief that is plausible on its face. *Soueidan*, 926 F.3d at 1034. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

It is undisputed that Missouri law governs Pietoso's breach-of-contract claim. Under Missouri law, this claim has four elements: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins.*, 897 F.3d 987, 994 (8th Cir. 2018) (quoting *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010)). The only element in dispute here is the third, and the issue is whether Pietoso has plausibly pleaded that Defendants breached the Agreement by increasing the basic-service rate for Optional Reasons without Pietoso's consent.

Defendants do not dispute that Pietoso plausibly pleaded that Defendants increased the basic-service rate for Optional Reasons. Instead, Defendants contend, and the district court concluded, that Pietoso pleaded itself out of its own claim by asserting that it was aware of and paid the increases for approximately eight years. To Defendants and the district court, Pietoso's faithful invoice payments constituted "actions and practices" manifesting its consent to Optional Reason increases, meaning that Defendants could not have breached the Agreement in the manner Pietoso alleged. We disagree.

-4-

The Agreement permitted Defendants to increase Pietoso's basic-service rate for an Optional Reason if Pietoso consented to paying the increase, and the Agreement specified that Pietoso's consent "may be evidenced" by "the parties' actions and practices." This provision of the Agreement essentially incorporated hornbook contract law. *See Maples v. United Sav. & Loan Ass'n*, 686 S.W.2d 525, 527 (Mo. Ct. App. 1985) (noting that assent may be determined "by the conduct of the parties" to a contract); Restatement (Second) of Contracts § 19 cmt. a (Am. L. Inst. 1981) (noting that conduct "may often convey" assent "as clearly as words"). The Agreement does not explicate this consent-by-conduct provision, such as by specifying in what circumstances "actions and practices" would manifest consent or whether particular "actions and practices" would be deemed to manifest consent. But we presume that Pietoso and Defendants contracted with existing principles of Missouri contract law in mind as to when conduct will show consent. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 713 (8th Cir. 2001) ("[I]t is presumed that the parties had the well settled law of the land in contemplation when the contract was made." (quoting *Sadler v. Bd. of Educ. of Cabool Sch. Dist. R-4*, 851 S.W.2d 707, 712-13 (Mo. Ct. App. 1993))).

Under Missouri law, whether conduct manifests consent is determined by "what a reasonably prudent person would be led to believe" by that conduct, *Silver Dollar City, Inc. v. Kitsmiller Constr. Co.*, 931 S.W.2d 909, 914 (Mo. Ct. App. 1996), in light of "all the circumstances and relations of the parties," *Roper v. Clanton*, 258 S.W.2d 283, 288 (Mo. Ct. App. 1953). Conduct that is "unambiguous" in light of all relevant circumstances suffices to show consent. *Roper*, 258 S.W.2d at 288; *see also Maples*, 686 S.W.2d at 527 (noting that consent is implied if it is a "necessary deduction from the circumstances, general language or conduct of the parties"). But acts that are "ambiguous in their character" in light of the relevant circumstances are insufficient. *See Zumwinkel v. Leggett*, 345 S.W.2d 89, 95 (Mo. 1961) (per curiam). Ordinarily, whether conduct manifests consent "is a question to be resolved by the trier of fact." *Silver Dollar City*, 931 S.W.2d at 914.

Even assuming that there are cases where the consent-by-conduct question can be resolved at the pleading stage, this is not one of them. In light of Pietoso's allegations, the relevant circumstances here do not give rise to the "necessary deduction" that Pietoso consented to Optional Reason increases solely by its actions and practices of faithfully paying the invoices. *See Maples*, 686 S.W.2d at 527. Under the Agreement, Defendants had the right to increase the basic-service rate for a Unilateral Reason without Pietoso's consent, and Pietoso had to pay such increases or else breach the Agreement. Defendants also could increase the basic-service rate for an Optional Reason, but only with Pietoso's consent, and Pietoso could refuse to pay such an increase without contractual consequence. According to Pietoso, the invoiced increases were always presented as Unilateral Reason increases, which is why it paid them without dispute for approximately eight years.[4] In these circumstances and at this stage of the litigation, Pietoso's faithful payment of the increases does not conclusively show anything more than that Pietoso complied with its contractual obligations. *See Zumwinkel*, 345 S.W.2d at 95 (noting that actions that are "consistent either with the continued existence of the original contract, or with a modification thereof," do not suffice to show consent to a modification).

Drawing reasonable inferences in Pietoso's favor, as we must at this stage, bolsters this point. *See Trone Health Servs.*, 974 F.3d at 850. It is "common sense" that "people are not inclined knowingly to consent to being economically gouged." *Paolella v. Browning-Ferris, Inc.*, 973 F. Supp. 508, 514 (E.D. Pa. 1997), *aff'd*, 158 F.3d 183 (3d Cir. 1998). Because Pietoso could refuse to pay an Optional Reason increase without contractual consequence, it defies common sense to view its actions

---

[4]Pietoso attached one such invoice as an exhibit to its complaint. That invoice does not contradict Pietoso's allegation that the increases were always presented as Unilateral Reason increases. *Cf. Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (noting that a court reviewing whether a complaint fails to state a claim to relief need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint"). The invoice shows that Defendants simply billed the increase as part of the "Total Amount Due" without explanation or qualification, suggesting that the increase was one Pietoso had to pay and thus was for a Unilateral Reason.

and practices of faithfully paying the invoices as an unambiguous manifestation of its consent to pay more voluntarily for the services it was receiving and would continue to receive under the Agreement. The more reasonable inference in the circumstances alleged here is that Pietoso paid the increases simply because, by all appearances, it had no choice but to do so.

In sum, we cannot conclude at this stage that Pietoso's invoice payments manifested its consent to paying Optional Reason increases. Thus, it cannot yet be decided that Defendants did not breach the Agreement by imposing Optional Reason increases without Pietoso's consent. The district court erred in concluding otherwise and in deciding that Pietoso's allegations failed to state a claim for breach of contract.

## III.

For the foregoing reasons, we reverse the district court's dismissal of the breach-of-contract count in Pietoso's complaint and remand for further proceedings consistent with this opinion.

_____